## No. 9778.

### SMITH BROS. & CO. VS. R. S. DELEON.

Questions of fact alone are involved, and the conclusions of the district judge are sustained.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor*, J.

---

*T. Gilmore & Sons* for Plaintiffs and Appellants:

1.  A party to whom goods are sold will be held as principal debtor.
2.  The fact of his assumption of a commission for the vendor in an incidental employment to buy a certain product will not affect his standing or the nature of his responsibility. Ewell's Evans on Agency, pp. 7-8.
3.  New issues cannot be made by subsequent or supplemental answer introducing an inconsistent defense. Cross on Pleading, 67. A party will not be permitted to shift his defence at will. Bender vs. Belknap, 23 Ann. p. 763-4, and cases cited.
4.  Accounts settled and stated are binding on the parties in subsequent transactions. Hennen's Digest, 515, 516, and cases cited in brief.
5.  Parol will be admitted to prove to whom credit is given. Authorities cited in brief.
6.  Unrestricted admissions pleaded in compensation extend to the whole character of the indebtedness. Compensation admits the claim sued upon. Louque's D., pp. 116, 117.

*Thos. C. W. Ellis* and *B. C. Elliot* for Defendant and Appellee:

1.  Where plaintiff sues defendant for the price, on the allegation of goods sold and delivered to defendant, and the proof shows that defendant was plaintiff's agent, and that

the goods were not sold to him, but to third persons, through him as plaintiff's agent, defendant will have judgment, because the *allegata* and *probata* must agree.

2. The contracts of sale and of mandate are different, and the resulting obligations, as also the actions to enforce said obligations are also different,

3. An agency proved to exist is presumed to have continued, and the onus is on him who alleges that it ceased to exist.

4. Where there is conflict of testimony between two witnesses, the opinion of the district judge hearing the testimony has great weight. 23 Ann. 253; 24 Ann. 484.

5. A witness who is candid, prompt and open in his testimony will be believed in preference to one who is evasive, shows over zeal, and states facts against his firm only after long and tedious cross-examination. 29 Ann, 768, Breard vs. Insurance Company.

6 Indebtedness accruing after the date of an attachment suit, or facts subsequently transpiring cannot aid the plaintiff. Such a suit must stand or fall on the condition existing at the date of its institution. Read vs, Ware, 2 Ann. 498; Price vs. Merritt, 13 Ann. 526; Denegre vs. Milne, 10 Ann. 324; Todd vs. Chouse, 14 Ann. 426.

7. Attachment on allegation of non-residence will be dissolved where proof shows that the defendent has a fixed domicile in the place where the suit is brought. C. P. 240; 21 Ann 173; Cross on Pleading, § 370.

8. When plaintiffs fail to show the existence of a debt, the attachment must be dissolved. C. P. 208, 239, 243.

The opinion of the Court was delivered by

FENNER, J. This suit is upon a balance of account for goods, wares and merchandise alleged to have been sold and delivered by plaintiffs to defendant, and for advances made to him, and is accompanied by an attachment of defendant's property.

The defense is substantially a denial that defendant purchased goods from plaintiffs, and a claim that the relation between them was simply that of principal and agent, under which defendant, a resident of Central America, solicited orders for goods from dealers in that country and transmitted them to plaintiffs, who filled them and sent the goods to defendant to be delivered to the parties and to collect and remit the price, for which the latter received no other compensation than a commission of two *per cent* on the amount of said sales.

The above statement involves the controversy in the case which turns exclusively upon questions of fact. The case is one of the most perplexing we have ever encountered. The brevity of this opinion will afford a scant indication of the long and patient labor we have expended in the study of the enormous volume of oral testimony, correspondence and accounts presented in the record, and in the weighing and comparison of the various facts and circumstances, some of which tend to support the theory of plaintiffs while others as strongly corroborate that of defendant.

But there are some undisputed facts which give to defendant's position a strength which plaintiffs have not, in our judgment, overcome.

1st.   It is clearly established that from June to December, 1884, the relation between the parties was unquestionably that of principal and agent, under the precise terms stated by the defendant.   This is evidenced by the correspondence, which embraces all the features of a written contract.   As the business continued without interruption, plaintiffs' contention that the terms of this contract were changed and an entirely new relation established between the parties, throws upon them the clear burden of proof.   There are no writings evidencing such a change, and plaintiffs claim that it was the result of oral agreement between the parties during the presence of defendant in this city in December, 1884.

Plaintiffs' testimony on this subject is not satisfactory.   It is very confused as to dates and is guarded and uncertain as to expressions, almost admitting that the new agreement was never reduced to particular and distinct expressions on any special occasion, but was merely a general understanding between the parties as the result of all their interviews.

We reach the conclusion that however clear and honest may have been plaintiffs' interpretation of these interviews, such understanding was on their side only and is not brought home to defendant with sufficient certainty to justify us in holding that it abrogated the clear written contract.   Defendant denies it point blank and *in toto*.   It requires something more than a vague and one-sided understanding of oral interviews to change a written agreement.

2d.   While giving full faith to the honesty of the respected plaintiffs in their interpretation of these interviews, circumstances are not wanting to sustain the equal honesty of defendant in taking an opposite view.   In all his dealings with parties in Central America from beginning to end, he never, at any time, assumed the role of principal, but acted always and exclusively as the avowed agent of Smith Bros.   He never assumed to re-sell goods or make any bargains whatever on his own account, but always delivered the goods consigned to him to the parties for whom they were ordered and under whose marks they were shipped, at the invoice prices of Smith Bros. & Co., without any profit whatever to himself, other than the two per cent commission which plaintiffs continued to pay him.   Even in the latest act of the business when, before any difficulty and at a time not suspicious, he took notes from a party for over-due account, the notes were given payable to "R. S. DeLeon, agent of Smith Bros. & Co."   These facts powerfully sustain the honesty of defendant's assertion that, from first to last, he considered himself to be acting as the simple agent of plaintiffs.

Inasmuch as his distinct and unqualified assent was necessary to change the original contract, we are bound to hold that it is not shown to have been voluntarily and understandingly given.

3d.   The judge *a quo* has decided this case in favor of defendant and nothing less than a moral certainty that he has committed error could justify us in disturbing his conclusion.   As already intimated, we are far from feeling any such certainty.

We might consume many pages in discussing the forms of accounts and various expressions in the correspondence, which are relied upon by either side in supporting its theory ; but we shall content ourselves with alluding to but a few of these points.

Thus plaintiffs claim that defendant is estopped by rendition of accounts to him in his own name and his acknowledgment thereof.

But similar accounts were rendered to him on October 1st and November 1st, 1884, when the relation of agency existed without dispute. He states that he regards them simply as accounts against him as agent, showing the amounts due for goods ordered by him, and which he was charged with the duty of collecting and crediting him with amounts remitted by him.

This is reasonable and consistent with the course of dealing between the parties.

Again, plaintiffs produce several of defendant's letters in which he sends orders for indicated parties, and directs them to be charged to his account.   But in the majority of his orders he makes no such request.   Yet all rested on the same basis, and defendant claims that the direction was mere surplusage intended as an order to charge to his agency account, as a basis for his commissions, which was done in all cases whether expressly ordered or not.

Finally plaintiffs say that defendant's action in taking notes from one or two parties for their accounts, showed that he was not acting as agent because he had no authority to sell on time.   But the whole course of dealings show that, from the beginning, goods were delivered before payment and collections were not actually made for considerable periods afterward.

This was certainly selling on credit though not, perhaps, on any fixed terms of credit.   It is not shown, however, that defendant did sell on fixed terms of credit ; but it rather appears that the notes were taken as the best settlement of over-due accounts and, as before stated, they were made payable to "R. S. DeLeon, agent of Smith Bros. & Co."

On the whole we conclude that nothing adduced by plaintiffs is irrec-

oncilable with the continuance of the clear written contract under which the dealings began and which is not shown to have been changed by evidence sufficiently certain to bind the parties.

If such change was made, plaintiffs have themselves to blame for not having proof of the change as clear as that which established the original contract.

Now, after plaintiffs had ordered the cessation of the dealings, they sent their agent to Central America to settle with DeLeon, who waited on him with this account. DeLeon thereupon offered to turn over to him the notes and accounts which he held as their agent for the goods sold, which fully covered the account and, as the evidence shows, have been since collected; but the agent declined to accept them and returning to New Orleans, advised plaintiffs of his course, whereupon this suit was brought and this attachment levied.

We concur with the judge *a quo* that his action and this attachment must fall under the facts of this case, and that plaintiffs' only rights against the defendant must be vindicated in an action for the settlement of the latter's agency.

Judgment affirmed.